Case No. 20-5159, Campaign Legal Center Appellants v. Federal Election Commission. Mr. Gaber for the appellants, Ms. Holman for the appellate. Mr. Gaber, good morning. Good morning, may it please the court. Mark Gaber for appellants. Congress conferred upon CLC a right to timely agency action on its administrative complaint filed with the FEC, and Congress and the FEC have conferred upon CLC the right to receive information upon the adjudication of CLC's administrative complaint. By failing to act for over four years, the FEC has denied both rights to CLC, and these injuries fall squarely within this court's precedent, recognizing plaintiffs have a statutory right to information, and in this case, to the right to timely agency action. And this has been true across a number of contexts. In the Sunshine Act case, the Rushforth case, this court recognized and reaffirmed in the Zivotofsky case that a plaintiff has standing to pursue a statutory right conferred by Congress to remedy that harm. In the FOIA cases, this court has recognized that Congress can confer a right in that case to information, recognized by the Supreme Court in Aikens and the FEC context in particular, and that standing exists regardless, without asking the question of what separate harm has the plaintiff experienced. This court has reaffirmed that recently in the McGann case, and again, in the recent Murphy versus Maloney versus Murphy case, has spoken to the particularized type of injury that one has when Congress gives to an individual, in the case of Murphy, certain members of Congress, the right to sue that it does not bestow upon others who may have brought that claim if they so chose. The FEC and the amici focus on the common cause case, but in common cause, the only issue before this court was whether the plaintiff had standing to challenge the dismissal of their claim. And although the statutory provision that gives CLC the right to sue here is one, it's one statute, it's one provision, it's a long paragraph with a series of sentences, there's two distinct causes of action in that provision. And there's two distinct types of harm that a plaintiff might have under that provision. And so in common cause, the court was only presented with a dismissal, a question about whether a dismissal was appropriate. And there, the harm is whether or not the substantive area of FEC law harms the plaintiff. Here, this is a very different context. And the harm is, is whether the delay in acting has harmed and it's the and in this context, there's also the the informational harm that we've pointed out in our brief. And didn't argue informational harm in your complaint or below. Your Honor, the the informational aspect is brought up in the complaint in paragraph three. CLC is informational. You know, the fact that CLC uses information to do public education campaigns to inform voters of illegal contributions. And I would note that the FEC has not challenged the CLC is raising of the informational harm on appeal. We have an independent obligation to determine whether you have standing doesn't matter whether the FEC raises it or not. That that's right, Your Honor. And I would say that in this case, this is a this is a legal argument. The law gives CLC the right to information, including the, you know, the Federal Register official policy of the FEC lists a bulleted. But you still have to assert a claim. What paragraph did you say your complaint makes? Well, in paragraph three, which is the kind of general paragraph that discusses the parties, it talks about CLC's, you know, what CLC does, the fact that CLC engages in public education. And this legal argument is directly related to that. That's not a claim. Just saying that you you collect information doesn't isn't a claim. That's not asserting a claim of informational injury. Well, the claim the claim, Your Honor, is the is the delay enacting and by delaying the FEC has denied CLC access to the information. There isn't a you know, this isn't your claim is based on delay. Your claim is not that you have been denied information. Your claim is that you were entitled to a decision or action within a claim that the district court analyzed. And that's the district court. That's the claim that the district court found was wanting. And there's there's two types of harm that claim. And so because because FECA prevents a plaintiff or any any person from accessing this information if the complaint is adjudicated and the decision is announced, CLC couldn't bring, for example, a FOIA claim here seeking this information. The only way CLC can get this information is if its complaint is adjudicated. And so the only claim CLC could make here is a delay claim. But the harm that flows from that delay is both the the denial of the right to independent statutory right that Congress has conferred that confer standing here and also the fact that by using a delay, the FEC can permanently deny access to this information and in so doing prevent CLC from being able to bring a separate claim under FOIA because the FECA requires the information to remain confidential until the claim the administrative complaint is adjudicated. And so a lot of under delay claim, there are just a lot of federal statutes that say people who are aggrieved by agency action can bring a lawsuit. That's a lot of cause of action provisions. What about this statute makes that cause of action provision that reference to being aggrieved create a legal right in a way that wouldn't do so for, I can't imagine how many other statutes. What I'm asking you is how could we write an opinion in your favor that would distinguish every other statute that uses similar language? But two points, Your Honor. The first is that when Congress uses that phrase aggrieved, the Supreme Court said that should be casting the standing nut widely. The second is that FECA, unlike I think most other statutes, actually provides some indication of what Congress thinks is the appropriate time period upon which to measure that delay. And that's different than most other statutes that do not do that, that for the APA, for example, has a more generalized provision. Here, Congress in an area where it has- If you agree that's not a time limit for action, it's just a measurement for sort of a baseline to start evaluating their conduct. So I don't know how something that's not even a real time limit can be critical to creating a legal right just to action by the agency. So I agree that it's- Right, and the legal injury, when I say legal right, I meant legal right and legal injury just by the inaction. So I think it's more than just jurisdictional. It's not just you can file a lawsuit at 120 days. It is that. But in some case, Congress has given an indication of what it thinks in some cases may be an unlawful delay. In some cases, it'll be 120 days. In other cases, it'll be longer than that. Is your position that every single time they use the word aggrieved and then have a in every one of those statutes in the U.S. Code, those folks are legally injured for Article III standing purposes to file suit just because they asked for agency action and it didn't happen within that non-limiting time period? No, Your Honor. I think that it's context-specific. And one, with respect to Congress, what was clear that part of the substantive importance of the statute is that responses happen quickly. And otherwise, you can totally subvert the purpose of the statute. And two- There's lots of statutes where Congress wants agencies to act quickly, particularly if health and human welfare are at stake. So I'm not sure that is much of a distinction. I'm just not sure how one could write an opinion on your delay claim that would find standing in a way that's not going to open the doors pretty broadly. That's what I'm trying to get. So the fact that Congress put that- I mean, the only indication we have that they wanted them to act quickly is that time frame. It's kind of bootstrapping to say that that's a difference. I'm- red lights are flashing on me. May I answer? Go ahead. Thank you. I think an important thing that distinguishes this case from those other statutes is this informational component that goes along with the delay that is a right granted by statute and puts- I think anytime an agency doesn't act, someone could say, well, if they did act, I would have whatever information is created by their action. But I think this court's precedent in the PETA case and in the anti-vivisection case makes this a stronger case for standing, that there is a- unlike in PETA, where there was no statutory right to file a complaint and there was no statutory right to the information. It was just information that the USDA was voluntarily giving. Here, there is- Congress has given a- set up a complaint process and given a right to timely action in that complaint process and has, by statute, by regulation, and in the federal register, set out information that you'll receive- you must receive. But the problem is, is that you never said in your complaint anywhere that there was specific information that you hadn't received, that if you had gotten it, you would do something with, or that is harming you in any particular way because you haven't received that information. And your honor, I think that, you know, the FEC has challenged the standing sort of facially and not factually, and I think has- recognizes that there is this obligation to provide this information. And to the extent there is a pleading issue on that score, I would submit that the that allegation, which I believe is- elevates, you know, sort of a form and not a substance issue. Was it a form? I mean, can you tell me a case where this court has granted leave to amend or ordered the district court to grant leave to amend when you never asked the district court first? Off the top of my head, no, your honor. But I would, you know, I would point out that this uses this information in cases, you know, where CLC is the party and that this- Where CLC has alleged informational injury. Correct. And this is, but this is not an issue that, you know, either MECAS or the FEC have raised, and I would say they have waived it. All right. If there are no more questions, we'll give you a couple of minutes and reply. Ms. Holman. Ms. Holman. May it please the court. My name is Elyse Holman, and I represent the Federal Election Commission in this matter. The sole issue on appeal is whether appellants have standing to file suit against the FEC for its alleged failure to act on an administrative complaint. According to this court's decision in Common Cause v. FEC, the answer to that question is a resounding no. In Common Cause, the court held that Section 30109AAA of the Federal Election Campaign Act creates a procedural right to sue, not standing. And the court further held that plaintiffs do not suffer informational injury if the information being upheld is simply the fact that a violation of FECA has occurred. Common Cause effectively forecloses standing in this matter because appellants have failed to distinguish their two alleged injuries from first, contrary to the appellant's argument. How would this statute ever be enforced if the FEC could simply just not act on anything that's filed? Your Honor, it would be enforced if the plaintiff actually first established that they had standing. It's not that… What kind of standing, if you're not actually sort of someone running against somebody, the competitor, and it's not the type of claim that we had in Aikens where even voters could say they need that information. What… In a case like this, who could ever sue if the FEC said, we just don't feel like doing this part of our job? I'm not saying this would happen here, but if the FEC just said that, we don't want to deal with this stuff. There's no… I don't know what injury anyone's ever going to have in this context. Your Honor, you were correct that the plaintiffs in Aikens would have standing in this circumstance. If a complainant had alleged that there were some non-disclosure, whether non-disclosure of a contribution or an expenditure, some sort of non-disclosure related to their underlying claim of an alleged FECA violation, then they could establish informational injury that could be sufficient for standing. However… How can people know… How can they know what's an unknown disclosure or an unknown contribution? How can people know an unknown contribution? Your Honor, I believe that… Right, it's undisclosed. I'm sorry. That was your answer, right? If it's undisclosed, then they can sue, but of course, if it's undisclosed, members of the public aren't going to know about it. That's the whole point of not disclosing it. Your Honor, often there are enforcement and administrative complaints filed claiming that disclosures were not properly reported, and it would be a similar situation here. If they allege that there was… I'm sorry. No, so people just proudly announced their violations of the law, hypothetically. Let's not talk about this case because we're not anywhere near merit stage, but if, let's say, someone is just sort of flagrantly making contributions in violation of the law to a PAC, they realize from this case that as long as they disclose them, they actually can't be stopped, and the FEC is like, we're not going to bother with these things. The statute, just Congress intended, just the FEC, just there'd be no enforcement of these problems? Well, Your Honor, I believe that what you're getting at, if they understand that, or if they know that a contribution has been made, and that contribution, they allege, violates FECA, and they bring a claim, but they don't disclose, or they don't allege that they've suffered informational injury, then essentially their interest that they are asserting is an interest in enforcement of the law, which is not a legally cognizable interest that is sufficient to create standing. Well, what if their interest was, it's very hard for our members to participate in a voting system in which all of these illegal contributions are happening? If someone said, we have members, and they're now incentivized to vote because of this sort of pollution of the electoral system. To be clear, I'm talking about a hypothetical case. Would that be sufficient to have standing? Your Honor, I'm sorry. I don't think I heard all of your question. I apologize. If an organization sued and said our members are disincentivized to participate in the electoral system, they're turned off because there's all this corrupt money being donated, and they cite a particular instance like was done here. They find sort of something that they believe was improper, and they say it happened three times, and this so colors their faith in the electoral system. They're no longer interested in voting or participating because it's not being policed the way it's supposed to be. Would that be a sufficient article for injury? No, Your Honor. I do not believe that it would because Section 30109 creates a procedural right to sue. The complainants need to allege a harm to a substantive right, and I'm not sure that in that context they will have made a sufficient argument that a substantive right has been harmed. So the statute doesn't create a substantive right to an electoral system in which these types of unlawful donations aren't made? Your Honor, Section 30109 does not create a substantive right. It creates a procedural right to sue. Your injury doesn't have to be in the enforcement electoral system that's not polluted by what the statute defines as improper donations. Your Honor, I agree that that is the purpose of the Federal Election Campaign Act to maintain integrity of the electoral system and to maintain the faith of the voters in the electoral system. Yes. But given that this is a procedural section in order to claim a violation of Section 30109 A8a, they need to allege a substantive harm, which they have failed to do in this context. Your argument on informational standing focused on, as you said, they already have information they might need, but you don't otherwise contest their standing to assert an informational standing case? You don't seem to contest that they haven't asserted an informational injury, and I'm curious about that. No, Your Honor, they haven't alleged an informational injury. As Your Honor were discussing earlier— Why does your brief argue the merits of whether there's an informational injury as opposed to whether they've even alleged one at all? Your Honor, our brief worked off of the assumption that perhaps their complaint sufficiently saved the informational argument. However, I agree that it absolutely did not explicitly allege informational injury, and they certainly at the district court level did not rely on an allegation that they were entitled to FEC investigatory materials. But assuming that they had sufficiently alleged an informational injury, we engaged in a discussion of whether that injury was actually sufficient for Article III, and it is not. So whether them or someone else came forward and had identified a distinct concrete particularized injury from these unlawful donations, and the FEC found probable cause, went forward, what kind of documents would be created through that investigative process and the voting process by the commissioners? What kind of publicly available or publicly publicly available documents would be created through the FEC? Well, the documents cannot be disclosed until the resolution of the matter because FECA prohibits any information being disclosed while it's pending. But upon the resolution, the FEC releases the basis of its determinations and has a policy of generally releasing documents such as the general counsel's report, briefs, memos, votes, reasons to believe, and similar sorts of documents in order to satisfy the regulations requirements of supplying the basis thereof. Okay. Thank you. Of course. Your Honors, neither of appellants' alleged injuries amount to injury. In fact, the section does not create a substantive right to FEC action within a specified time frame, and they have not alleged... Your Honors, I see that I have run out of time. May I briefly conclude? Yes, go ahead. Thank you. They have not sufficiently alleged informational injury because they have not been denied any of the information that FECA requires to be disclosed at this time, and the additional information that they seek are legal determinations that are not entitled to. And because they have failed to establish injury, they have not demonstrated standing, and we would respectfully request that this court affirm the district court's dismissal of appellant's complaint for lack of standing. Thank you. Do you want to go ahead and just take two minutes, Mr. Gaber? Two points in rebuttal, Your Honors. I'll start with where counsel left off. I do not think it's the case, and this court's precedent do not make it the case that the only type of informational harm could be a reporting or disclosure violation. In the Friends of Animals case, the informational harm under the Endangered Species Act was the information sent along by the participants in the agency proceedings. And here, under the FEC's policy in the Federal Register, we would be entitled to the respondents' responses and any information in the FEC's discovery that they produced. And that's similar in the PETA case with the Animal Welfare Act, that it's investigatory information that's provided that there's an entitlement to. And so to cabin informational standing in this case to just the reporting and disclosure substantive FECA violation would set a different precedent under FECA than exists in any of this case, in this court's precedent. And second, on the claim that this is just a mere procedural right, in Spokio, the Supreme Court said that the reason that some procedural rights will not confer standing is that there might not be any harm that flows, for example, from incorrect zip code in the Fair Credit Reporting Act context. Here, there's always harm that flows from the agency delay because, one, for the substantive enforcement of FECA and CLC's ability to educate people to decide whether or not they need to make a rule-making. If FEC is not interpreting the law correctly, we'll never know the FEC's interpretation if never act and can't engage in any of those activities. But we will also never receive the information we're entitled to but can't make a claim about until the agency acts. The case is submitted.
judges: Henderson, Millett, Wilkins